IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| DEANNA M. HO-CHING, | ) | CV. NO. 07-00237 DAE-KSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CITY AND COUNTY OF | ) | |
| HONOLULU, HONOLULU | ) | |
| POLICE DEPARTMENT; JOHN | ) | |
| DOES 1-10; DOE ENTITIES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

On April 27, 2009, the Court heard Defendant's Motion.  Venetia K.

Carpenter-Asui, Esq., appeared at the hearing on behalf of Plaintiff; Tracy S.

Fukui, Deputy Corporation Counsel, appeared at the hearing on behalf of

Defendant.  After reviewing the motion and the supporting and opposing

memoranda, the Court GRANTS IN PART AND DENIES IN PART Defendant's

Motion. (Doc. # 45.)  Defendant's motion is granted with respect to Plaintiff's

intentional infliction of emotional distress claim and a portion of Plaintiff's

retaliation claims.  Defendant's motion is denied in all other respects.

## BACKGROUND

Grant Moniz was a Sergeant with the Honolulu Police Department ("HPD").  Moniz supervised Plaintiff, HPD Officer, Deanna Ho-Ching.  Plaintiff states that Sergeant Moniz asked her to put in for a transfer to his sector, which she did, in October 2004.  Plaintiff alleges that between November 2004 and June 2005, Sgt. Moniz engaged in conduct, which she perceived as sexual harassment, including commenting on her perfume, asking for a kiss, asking her if he was next in line to the man she was dating, telling her he was experienced and interested in a no-strings attached relationship, telling her to dump her boyfriend, grabbing her face and kissing her, grabbing her breasts and trying to kiss them, rubbing her vagina through her pants, and trying to place her hand on his penis, in addition to other conduct.  Plaintiff states that she pushed Moniz away and told him this would not happen.  Moniz allegedly later told her that he did not take rejection well.

Plaintiff alleges that Moniz retaliated against her by engaging in various acts between June 2005 through March 2006, including harshly criticizing her written reports, issuing a poor performance evaluation, falsely accusing her of not taking pride in her work by not properly stapling her reports, reprimanding her for being tardy when others were not reprimanded, initiating investigations into her conduct, not issuing her commendations, and reprimanding her in general.

2

Plaintiff also claims that Lt. April Daniels also retaliated against her in January 2006, by conducting three investigations into Plaintiff's alleged conduct pertaining to leaving work early and being untruthful, and demanding a written report for Plaintiff parking in a red zone.  Plaintiff alleges that Officer Larson Miral retaliated against her and that her beat partners alienated her.

Plaintiff claims that in December 2005, she confided in her friend, Officer Deena Adams, about retaliation by Moniz.  Plaintiff also asserts that she approached Captain Carlton Nishimura in January 2006 and told him that she was being harassed and targeted at work and discussed an allegedly false report that she had left work early on January 4, 2006.  An investigation was started into Plaintiff's alleged conduct of leaving work early.  Plaintiff claims that she confided in Deena Adams again in January 2006, and Adams reported the alleged harassment and retaliation on her behalf to Lieutenant Inouye on January 21, 2006.

Plaintiff submitted a request for a transfer to another district in January 2006, which she claims resulted in a loss of three years seniority.  Plaintiff was transferred on March 18 or 19, 2006, to District 7.

On March 20, 2006, Plaintiff made a formal internal complaint to her employer alleging she had been subjected to harassment and retaliation by

Sergeant Grant Moniz.  Defendant investigated Plaintiff's internal complaint.  In March 2006, Plaintiff transferred out of Moniz's sector.

On July 11, 2006, Plaintiff signed and filed a charge of discrimination with the Hawaii Civil Rights Commission ("HCRC") and the Equal Employment Opportunity Commission ("EEOC").  Plaintiff alleged she had been subjected to sexual harassment, both quid pro quo sexual harassment and a hostile work environment based upon sexual advances by Sergeant Grant Moniz.  She stated that the last incident occurred on March 6, 2006 (the "Sexual Harassment Charge").

On July 19, 2006, Plaintiff was notified that she was suspended for ten working days because the Administrative Review Board found that she had left work early on January 4, 2006, failed to arrive at an assigned traffic complaint, and was untruthful during the investigation.

Plaintiff filed a workers' compensation claim on September 8, 2006. Plaintiff submitted a request for leave on October 31, 2006, due to stress and anxiety related to the alleged sexual harassment.

Plaintiff filed another discrimination charge with the HCRC and EEOC on December 21, 2006, alleging retaliation based upon her suspension from employment of ten days, and the Sexual Harassment Charge she had filed in March

4

(the "First Retaliation Charge").  Plaintiff did not list any other alleged retaliatory acts.

Plaintiff was cleared to return to work full-duty on January 10, 2007, and again on January 31, 2007, by three different doctors.  Plaintiff was told she had to be cleared for duty by Defendant's clinical psychologist.  That psychologist found Plaintiff unfit for full duty.  Plaintiff was ordered to surrender her badge and other police officer items.  Plaintiff returned to work on February 12, 2007, in a limited duty capacity in a clerical civilian job in the records division.

On May 8, 2007, Plaintiff filed a charge with the EEOC and HCRC based upon gender discrimination and alleged retaliatory acts of not allowing her to return to work in full capacity and removing her police powers and equipment ("Discrimination and Second Retaliation Charge").  That same day, Plaintiff filed a complaint in this Court.

Plaintiff filed her first amended complaint ("FAC") in this Court on June 19, 2007.  Plaintiff brings claims of gender discrimination, sexual harassment, and retaliation in violation of Title VII and Hawaii Revised Statute Chapter 378, intentional infliction of emotional distress ("IIED"), and breach of implied contract.

Defendant filed the instant motion on February 11, 2009.  (Doc. # 45.)

Plaintiff filed her opposition on April 9, 2009, and Defendant filed a reply on April

17, 2009.

## STANDARD OF REVIEW

Rule 56 requires summary judgment to be granted when "the

pleadings, the discovery and disclosure materials on file, and any affidavits show

that there is no genuine issue as to any material fact and that the movant is entitled

to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Porter v. Cal. Dep't

of Corrections, 419 F.3d 885, 891 (9th Cir. 2005); Addisu v. Fred Meyer, Inc., 198

F.3d 1130, 1134 (9th Cir. 2000).  A main purpose of summary judgment is to

dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett,

477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to

demonstrate facts to establish what will be an essential element at trial.  See id. at

323.  A moving party without the ultimate burden of persuasion at trial -- usually,

but not always, the defendant -- has both the initial burden of production and the

ultimate burden of persuasion on a motion for summary judgment.  Nissan Fire &

Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).  The burden

initially falls upon the moving party to identify for the court those "portions of the

6

materials on file that it believes demonstrate the absence of any genuine issue of material fact." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).

Once the moving party has carried its burden under Rule 56, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial" and may not rely on the mere allegations in the pleadings.   Porter, 419 F.3d  at 891 (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  In setting forth "specific facts," the nonmoving party may not meet its burden on a summary judgment motion by making general references to evidence without page or line numbers.  S. Cal. Gas Co. v. City of Santa Ana, 336 F.3d 885, 889 (9th Cir. 2003); Local Rule 56.1(f) ("When resolving motions for summary judgment, the court shall have no independent duty to search and consider any part of the court record not otherwise referenced in the separate concise statements of the parties.").  "[A]t least some 'significant probative evidence'" must be produced.  T.W. Elec. Serv., 809 F.2d at 630  (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)).  "A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact." Addisu, 198 F.3d at 1134.

7

When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." T.W. Elec. Serv., 809 F.2d at 631.  In other words, evidence and inferences must be construed in the light most favorable to the nonmoving party.  Porter, 419 F.3d at 891.  The court does not make credibility determinations or weigh conflicting evidence at the summary judgment stage.  Id.  However, inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party. T.W. Elec. Serv., 809 F.2d at 631.

DISCUSSION

I.   Sexual Harassment Claims

A.   Timeliness

Defendant argues that Plaintiff's sexual harassment claim is barred because it was not timely filed.  Defendant points out that the last alleged incident of sexual harassment occurred in June 2005, but that Plaintiff did not file her charge until July 11, 2006, which is beyond the 300-day time limit.  Plaintiff asserts that prior to signing the Sexual Harassment Charge, she filled out a pre-complaint questionnaire, which the HCRC stamped received on March 28, 2006.

8

Without citing any law, Plaintiff argues that her pre-complaint questionnaire qualifies as the filing of an administrative charge.  If the pre-questionnaire filing date is used, the 300-day time period would extend back to June 2, 2005.  In its reply brief, Defendant asserts that the pre-complaint questionnaire cannot start the 300-day clock because the pre-complaint questionnaire itself was not filed with both the HCRC and the EEOC.

"Although ordinarily the administrative charge must be filed within 180 days of the alleged unlawful employment practice, the deadline is extended to 300 days if the charge is initially filed with a state agency that enforces its own anti-discrimination laws."  EEOC v. Dinuba Med. Clinic, 222 F.3d 580, 585 (9th Cir. 2000); See 42 U.S.C. § 2000e-5(e)(1).  "An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made. In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; . . . . A claim is time barred if it is not filed within these time limits."  Nat'l Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 109 (2002).  "In Hawaii, the HCRC is authorized to grant and seek relief for discriminatory practices."  Hale v. Haw. Publ., Inc., 468 F. Supp. 2d 1210, 1219

9

(D. Haw. 2006). "[A] charge filed with the state agency before the 300-day filing deadline expires is deemed automatically filed with the EEOC on the same day." Laquaglia v. Rio Hotel & Casino, Inc., 186 F.3d 1172, 1175 (9th Cir. 1999). "The filing of a charge . . . determines when the Act's time limits and procedural mechanisms commence." Fed. Exp. Corp. v. Holowecki, 128 S. Ct. 1147, 1159 (2008).

The question here is not whether the pre-complaint questionnaire was dual filed, as argued by Defendant, but whether it constituted the filing of a charge with the HCRC.[1] If the pre-complaint questionnaire qualifies as the filing of a charge, then it would be deemed automatically filed with the EEOC on the same day, and the June 2005 alleged act of sexual harassment would have occurred within the 300-day time period, making the Sexual Harassment Charge timely filed.[2]

---

[1] Defendant relies on Hale for its argument that the pre-complaint questionnaire must be dual filed. This court finds this argument unpersuasive because Hale was decided before the Supreme Court case of Federal Express.

[2] The Supreme Court has held that as long as one act that constitutes a part of a hostile work environment claim falls within the required time period, the Court may analyze previous acts to determine whether all acts taken together created a hostile work environment under the continuing violation doctrine. See Nat'l Railroad Passenger Corp., 536 U.S. at 117 ("It does not matter, for purposes of the statute, that some of the component acts of the hostile work environment fall

(continued...)

The Ninth Circuit previously allowed a completed pre-intake questionnaire to automatically qualify as the filing of a discrimination charge.  See Casavantes v. Cal. State Univ., Sacramento, 732 F.2d 1441, 1442 (9th Cir. 1984). However, in 2008, the Supreme Court abrogated that case and held that "if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee."  Fed. Exp. Corp., 128 S. Ct. at 1158.  The Supreme Court explained that this "means the filing must be examined from the standpoint of an objective observer to determine whether, by a reasonable construction of its terms, the filer requests the agency to activate its machinery and remedial processes."  Id.

In Federal Express, the Supreme Court held that the pre-intake questionnaire constituted a filing of a charge because the complainant had attached an affidavit to the intake form in which she asked the agency to "'[p]lease force

---

[2](...continued)

outside the statutory time period. Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability.")  Here, Plaintiff alleges that in June 2005, Sergeant Moniz made specific comments that made Plaintiff feel he was pressuring her to have sex with him.  This qualifies as an act of harassment based on sex.  As long as this act occurred within the 300-day time period, Plaintiff's hostile work environment claim is not time barred.

Federal Express to end their age discrimination plan so we can finish out our careers absent the unfairness and hostile work environment created within their application of Best Practice/High-Velocity Culture Change.'" Id. at 1159-60.  The Supreme Court noted that the intake form itself did not contain a request for the agency to act, but held that the written request in the affidavit was properly construed as a request for agency action.  Id.

Here, there is no dispute that the actual charge of discrimination was signed by Plaintiff on July 11, 2006.  It is also undisputed that Plaintiff dual filed her Sexual Harassment Charge and the 300-day time limit applies in this case from the filing of the charge.[3]  It is also undisputed that all of the alleged sexual harassment acts listed in the FAC occurred at the latest in June 2005 and that June 2005 is more than 300 days prior to the July 11, 2006 filing of the Sexual Harassment Charge.  Thus, the issue is whether the pre-complaint questionnaire constituted the filing of a charge.

The pre-complaint questionnaire in this case is somewhat similar to the intake form discussed in Federal Express in that it also states that the information will be used to determine if the agency had jurisdiction to investigate

---

[3] In its motion, Defendant states "[t]he three-hundred (300) day period applies here."  (Mot. at 6).

12

the complaint.  The questionnaire differs from the intake form described in Federal

Express in that it also states that information provided will be used to draft the

charge of discrimination.  The questionnaire provides spaces to provide all the

information required by 29 C.F.R. § 1601.12.[4]  The questionnaire also asks the

complainant to identify witnesses and name their attorney, if any.

Plaintiff identified several witnesses and her attorney.  In addition,

Plaintiff attached a single-spaced three page attachment detailing events that she

believed supported her sexual harassment claim.  Plaintiff stated that she could not

go through her employer because she was worried about retaliation.  The agency

---

[4] 29 C.F.R. § 1601.12 provides as follows:
 (a) Each charge should contain the following:
(1) The full name, address and telephone number of the person
making the charge except as provided in § 1601.7;
(2) The full name and address of the person against whom the charge
is made, if known (hereinafter referred to as the respondent);
(3) A clear and concise statement of the facts, including pertinent
dates, constituting the alleged unlawful employment practices: See §
1601.15(b);
(4) If known, the approximate number of employees of the respondent
employer or the approximate number of members of the respondent
labor organization, as the case may be; and
(5) A statement disclosing whether proceedings involving the alleged
unlawful employment practice have been commenced before a State
or local agency charged with the enforcement of fair employment
practice laws and, if so, the date of such commencement and the name
of the agency.

accepted Plaintiff's questionnaire and drafted a formal charge for her to sign, which she did.

Taking all of this together, this Court finds that an objective observer would believe that Plaintiff was requesting the agency to take action when she submitted the pre-complaint questionnaire.  See Roberts v. Nev. ex rel. Dep't of Conservation and Natural Res. Div. of State Parks, NO. 3:05-CV-00459 RA, 2008 WL 3925084, at *4 (D. Nev. Aug. 20, 2008) (finding that a letter met the Supreme Court's requirements to constitute a charge).  As at least one event of alleged sexual harassment occurred within 300 days of the filing of the pre-complaint questionnaire, Plaintiff's sexual harassment claims are timely.  Accordingly, Defendant's motion is denied with respect to Plaintiff's sexual harassment claims.

B.     Legitimate Reason and Pretext

Defendant argues that the burden shifting framework set forth in McDonnell Douglas Corp. v. Green applies to Plaintiff's quid pro quo sexual harassment claims[5] and that Plaintiff cannot establish that the actions taken against her were a pretext.  Defendant is mistaken.

---

[5] Plaintiff has also brought a hostile work environment claim, but Defendant has not moved for summary judgment with respect to the merits of that claim.

14

The <u>McDonnell Douglas</u> burden shifting test is not the test to apply to a sexual harassment claim.  Instead, where an employee is allegedly harassed by her direct supervisor, she may bring suit for sexual harassment against the employer under either a quid pro quo/tangible employment action theory, or a hostile work environment theory.  <u>See</u> <u>Craig v. M & O Agencies, Inc.</u>, 496 F.3d 1047, 1054 (9th Cir. 2007) (citing <u>Burlington Indus., Inc. v. Ellerth</u>, 524 U.S. 742 (1998) and <u>Faragher v. City of Boca Raton</u>, 524 U.S. 775 (1998)).  Under a "tangible employment action" or "quid-pro-quo" harassment theory, "the employer may be held vicariously liable under traditional agency law" where "'a supervisor exercising his authority to make critical employment decisions on behalf of his employer takes a sufficiently concrete action with respect to an employee.'"  <u>Craig</u>, 496 F.3d at 1054 (citation omitted).  Under a "hostile environment" theory, the traditional agency principles have been tempered "by allowing the employer to assert an affirmative defense if the employer 'is able to establish that it acted reasonably and that its [ ] employee acted unreasonably.'"  <u>Id.</u> (citation omitted); <u>see also</u> <u>Arquero v. Hilton Hawaiian Village LLC</u>, 91 P.3d 505, 511 (Haw. 2004).

Accordingly, Defendant's arguments regarding pretext do not apply to Plaintiff's sexual harassment claim and Defendant's motion is DENIED with respect to Plaintiff's sexual harassment claims.

15

II.     Retaliation Claims

    A.     Exhaustion of Remedies

        Defendant argues that Plaintiff failed to exhaust her administrative remedies with respect to her retaliation claims because she did not list the following alleged acts of retaliation in any of her charges: 1) on January 4, 2006, Lt. April Daniels demanded a written report for parking in a red zone; 2) on June 20, 2006, HPD denied Plaintiff's request to work on the first watch due to her child care responsibilities; and 3) other unspecified retaliation claims.  Plaintiff does not address this argument in her opposition.

        "The jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation."  Leong v. Potter, 347 F.3d 1117, 1122 (9th Cir. 2003) (citing EEOC v. Farmer Bros. Co., 31 F.3d 891, 899 (9th Cir. 1994) and Sosa v. Hiraoka, 920 F.2d 1451, 1456 (9th Cir. 1990)).  Generally, the claims raised in district court must have previously been presented to the EEOC.  Id. (citing Albano v. Schering-Plough Corp., 912 F.2d 384, 385 (9th Cir. 1990)).

        The court must, however, also consider claims that were not asserted in the EEOC charge, but are asserted for the first time in the lawsuit, if those claims fell within the scope of the EEOC's actual investigation, or are "like or reasonably related to" the allegations made before the EEOC, such that they would

have been included within the scope of an EEOC investigation.  Id. (citing Sosa,

920 F.2d at 1456); Freeman v. Oakland Unified Sch. Dist., 291 F.3d 632, 636 (9th

Cir. 2002).  A plaintiff's claims are considered "reasonably related to allegations in

the charge to the extent that those claims are consistent with the plaintiff's original

theory of the case."  Freeman, 291 F.3d at 636 (citing B.K.B. v. Maui Police Dep't,

276 F.3d 1091, 1100 (9th Cir. 2002)).  Factors warranting consideration to

determine whether the exhaustion requirement has been satisfied include:  "the

alleged basis of the discrimination, dates of discriminatory acts specified within the

charge, perpetrators of discrimination named within the charge, and any locations

at which discrimination is alleged to have occurred."  Id.  "The crucial element of a

charge of discrimination is the factual statement contained therein."  Id.

Here, the retaliatory acts alleged in Plaintiff's First and Second

Retaliation Charges pertained to Plaintiff's ten-day suspension from employment

in July and August 2006, and her attempt to return to work in full capacity in

January and February 2007.  None of Plaintiff's charges, or the attachments

thereto, mentioned Lt. April Daniels, making a written report for parking in a red

zone, the dates of January 4, or June 20, 2006, or a denial of Plaintiff's request to

work on the first watch due to her child care responsibilities.  Although these

17

allegations are based upon retaliation, they are not obviously actions that would have been investigated by the agency based upon her charges.   See Finazzo v. Hawaiian Airlines, Civil No. 05-00524, 2007 WL 2668711, at *11 (D. Haw. Sept. 7, 2007) (granting summary judgment with respect to some claims because the events alleged in the discrimination charge involved different personnel and were unrelated discrete acts).

Morever, Plaintiff has not addressed this argument in her opposition, so there is no explanation whatsoever as to how actions by Lt. April Daniels asking for a written report for parking in a red zone, or the denial of working the first watch are reasonably related to actions pertaining to her ten-day suspension or attempt to return to work.  Accordingly, this Court GRANTS Defendant's motion with respect to these actions.  Plaintiff may not rely upon alleged actions of Lt. April Daniels demanding a written report for parking in a red zone and HPD denying Plaintiff's request to work on the first watch due to her child care responsibilities as proof of retaliatory conduct.

B.    Causal Connection

Defendant next argues that Plaintiff cannot establish a causal link with respect to some of the alleged retaliatory acts because those acts occurred prior to the date she complained about harassment.

18

Title VII prohibits "an employer [from] discriminat[ing] against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  Hawaii likewise makes it unlawful for an employer "to discharge, expel, or otherwise discriminate against any individual because the individual has opposed any practice forbidden by this part or has filed a complaint, testified, or assisted in any proceeding respecting the discriminatory practices prohibited under this part[.]"  Haw. Rev. Stat. § 378-2(2).

A prima facie case of retaliation may be proven through evidence that the plaintiff (1) engaged in a protected activity; (2) was subjected to an adverse employment action; and (3) a causal link exists between the two.  Raad v. Fairbanks N. Star Borough Sch. Dist., 323 F.3d 1185, 1197 (9th Cir. 2003).

Plaintiff alleges in her Complaint and declaration to have suffered various retaliatory acts which occurred between June 2005 and March 2006.  (FAC at 7-11.)  Plaintiff alleged that she had refused Moniz's sexual advances.  She also alleged in her Complaint and declaration that she had told Officer Deena Adams (aka Deena Thoemmes) about the alleged sexual harassment in late December 2005, and told Captain Carlton Nishimura about it in January 2006.  (FAC at 12-

19

115; Pl.'s Decl. at 10-11.)  In her opposition to the instant motion, however, Plaintiff's counsel only discusses March 20, 2006, as the date upon which Plaintiff relies as the date on which she reported sexual harassment.  (See Opp'n at 29-31.) Indeed, there is no dispute that Plaintiff reported sexual harassment to Detective Deena Adams on March 20, 2006, and that Adams in turn reported it to Lieutenant Jerry Inouye.  Lieutenant Inouye then reported it to his superior, Captain Thomas Grossi.

Accordingly, as March 20, 2006 is the operative date of engaging in protected activity, this Court grants Defendant's motion with respect to any retaliatory actions allegedly taken by any employee, other than actions taken by Sergeant Moniz, prior to March 20, 2006.  Plaintiff may not rely on actions taken before March 20, 2006, by persons other than Moniz, to establish her retaliation claims.[6]

---

[6] This Court notes that the retaliatory acts alleged to have occurred between January 1, 2006 and March 20, 2006, were acts taken by Acting Lieutenant April Daniels, Officer Larson Miral, or Plaintiff's beat partners.  Even if these acts were not barred from consideration due to having occurred before Plaintiff made an official complaint in March 2006, they are barred because Plaintiff has not shown that April Daniels, Miral, or her beat partners knew of her alleged protected activity at the time they engaged in the alleged retaliatory acts.  This is discussed in section II.C.  In addition, some of the acts allegedly engaged in by April Daniels cannot be considered because Plaintiff failed to exhaust her administrative remedies, as discussed in section II.B.

C.     Personal Knowledge of Protected Activity

Defendant argues that to the extent Plaintiff's retaliation claims are based upon actions taken by Lt. April Daniels, Captain Robert Green, Major Mark Nakagawa, or her beat partners, Plaintiff has not shown that any of these persons were aware of Plaintiff's sexual harassment complaint.  Indeed, Daniels testified that she was not aware of any complaints by Plaintiff against Moniz at the time she initiated the three investigations into various conduct by Plaintiff, which later resulted in her suspension.  Daniels also testified that she conducted the investigations based upon her personal observations and was not directed to initiate investigations by Moniz.  Defendant also argues that Officer Moniz was not aware of Plaintiff's complaints.  Plaintiff did not address this argument in her opposition.

As part of the causal link prong of a prima facie case of retaliation, "the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity."  Raad, 323 F.3d at 1197; Cohen v. Fred Meyer, Inc., 686 F.2d 793, 796 (9th Cir. 1982) ("Essential to a causal link is evidence that the employer was aware that the plaintiff had engaged in the protected activity.").

Here, as Plaintiff does not address this argument in her opposition, Plaintiff has failed to create a genuine issue of material fact that Lt. April Daniels,

Captain Robert Green, Major Mark Nakagawa, or her beat partners knew that she engaged in protected activity before engaging in the alleged retaliatory acts. Indeed, although Plaintiff mentions Lt. April Daniels in her declaration, she states Daniels was aware of her complaint only because Daniels was friends with Moniz. This is nothing more than Plaintiff's speculation and does not create a material issue of fact as to Daniels' knowledge of Plaintiff's complaint at the time that Daniels conducted the investigations into Plaintiff's alleged conduct.  See Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001) ("conclusory allegations unsupported by factual data are insufficient to defeat the County Defendants' summary judgment motion"); Roley v. New World Pictures, Ltd., 19 F.3d 479, 482 (9th Cir. 1994) ("naked allegations and speculation" are insufficient to preclude summary judgment); Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) ("Sweeping conclusory allegations will not suffice to prevent summary judgment.").  Morever, Daniels initiated the investigations in January 2006, which was before Plaintiff made her official internal complaint in March 2006.  Plaintiff has admitted that in early January 2006, she had only confided in Adams about the alleged harassment by Moniz.

Accordingly, Defendant's motion is GRANTED with respect to alleged retaliatory actions taken by Lt. April Daniels, Captain Robert Green, Major

Mark Nakagawa, or Plaintiff's beat partners because Plaintiff cannot establish that these persons were aware of her protected activity before that time.

With respect to Officer Moniz, however, it is enough that Plaintiff asserts that she clearly rebuffed Officer Moniz's sexual advances, pushed him away, informally confided in a co-worker about it, attempted to avoid Moniz, stopped coming to work, requested a transfer, and eventually filed a formal complaint against him.  These activities establish that she engaged in protected activity of which Officer Moniz was aware.  See Black v. City & County of Honolulu, 112 F. Supp. 2d 1041, 1049 (D. Haw. 2000) ("refusal of sexual advances [may be] sufficient to constitute protected activity") (citing cases); see Sarantis v. ADP, Inc., No. CV-06-2153, 2008 WL 1776508, at *8 (D. Ariz. April 15, 2008).

However, not all of the alleged retaliatory act by Moniz are actionable.  As set forth above, "[a]n individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made. . . . A claim is time barred if it is not filed within these time limits." Nat'l Railroad Passenger Corp., 536 U.S. at 109.  Most of the alleged retaliatory actions engaged in by Moniz occurred more than 300 days prior to Plaintiff's filing of the First Retaliation Charge.  Accordingly, Defendant's motion is GRANTED with

23

respect to actions engaged in by Moniz that occurred beyond the 300-day time

limit and is DENIED with respect to alleged retaliatory actions taken by Moniz

within the 300-day time period prior to Plaintiff filing her First Retaliation Charge.

      D.    <u>Adverse Actions</u>

Defendant next argues that certain alleged retaliatory conduct (that

occurred within the 300-day time period) does not rise to the level of an adverse

employment action.  Specifically, Defendant contends that Plaintiff's allegations

that Officer Moniz issued a poor quality performance evaluation in March 2006,

harshly criticized her written reports, and falsely accused her of not stapling her

reports properly in February and March 2006, are not materially adverse

employment actions.[7]

An "action is cognizable as an adverse employment action if it is

reasonably likely to deter employees from engaging in protected activity."  <u>Ray v.</u>

<u>Henderson,</u> 217 F.3d 1234, 1243 (9th Cir. 2000); <u>Burlington N. and Santa Fe Ry.</u>

<u>Co. v. White,</u>  548 U.S. 53, 68 (2006) (a challenged action is materially adverse if

"it might have 'dissuaded a reasonable worker from making or supporting a charge

---

[7] Defendant also argues that alienation by beat partners does not rise to the level of an adverse action.  This Court will not consider this argument because Plaintiff's claims regarding actions taken by her co-workers have been dismissed for failure to establish that they had personal knowledge of her protected activity.

of discrimination.'") (citation omitted).  The Ninth Circuit construes adverse

employment action broadly and has found that "a wide array of disadvantageous

changes in the workplace constitute adverse employment actions." Ray, 217 F.3d

at 1240; Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir.

2004); Strother v. S. Cal. Permanente Med. Group, 79 F.3d 859, 869 (9th Cir.

1996); Lyons v. England, 307 F.3d 1092, 1118 (9th Cir. 2002) ("Title VII does not

limit its reach only to acts that take the form of cognizable employment actions

such as discharge, transfer, or demotion.") (quotation marks and citation omitted).

However, not every employment decision amounts to an adverse

employment action.  Ray, 217 F.3d at 1240.  Indeed, "normally petty slights, minor

annoyances, and simple lack of good manners will not create [a] deterrence" from

engaging in protected activity.  Burlington N., 548 U.S. at 68.  "An employee's

decision to report discriminatory behavior cannot immunize that employee from

those petty slights or minor annoyances that often take place at work and that all

employees experience."  Id.  To determine whether a particular action is materially

adverse, the court must employ an objective standard and consider the context and

circumstances of the particular case.  Id. at 68-69, 71.

In Ray, the court found that the elimination of the Employee

Involvement program, and the flexible start-time policy, the institution of

25

lockdown procedures, reduction of workload, and reduction of pay

disproportionately to the reductions faced by other employees, qualified as adverse

employment actions.  Ray, 217 F.3d at 1243-44.  The court reasoned that since the

actions "decreased Ray's pay, decreased the amount of time that he had to

complete the same amount of work, and decreased his ability to influence

workplace policy, . . .[they] were reasonably likely to deter Ray or other employees

from complaining about discrimination in the workplace."  Id. at 1244.

The Ninth Circuit has found that actions such as transferring job

duties, or actions that negatively affect the employee's compensation are adverse

employment actions.  Fonseca, 374 F.3d at 847; Yartzoff v. Thomas, 809 F.2d

1371, 1376 (9th Cir. 1987).  The Ninth Circuit has also found that being excluded

from meetings, seminars, and positions that would have made the employee

eligible for salary increases, and being given a more burdensome work schedule, if

proven, were sufficient to establish adverse employment actions.  Strother, 79 F.3d

at 869.  In addition, undeserved performance ratings can constitute an adverse

employment action.  Yartzoff, 809 F.2d at 1375.

Here, Plaintiff alleges that Officer Moniz issued a poor quality

performance evaluation, harshly criticized her written reports, and falsely accused

her of not stapling her reports properly, after Plaintiff had refused his sexual

advances and allegedly had to physically push him off of her.  Plaintiff also asserts

that these three actions were taken as part of a plan by Moniz to remove unwanted

personnel from his platoon, and were taken in conjunction with other alleged

retaliatory acts.

Although these three specific actions may not each rise to the level of

a materially adverse employment action, given that these actions of harsh criticism

and a poor work performance evaluation were done by the alleged sexual harasser

and supervisor himself, in addition to other actions, this Court finds that there is a

genuine issue of material fact as to whether these individual actions are materially

adverse employment actions.  A reasonable employee may be deterred from

engaging in protected activity if they knew that the supervisor who was sexually

harassing them would give them poor performance evaluations, harsh criticisms,

and falsely accuse them of being sloppy with their reports, as part of an overall

plan to get the employee in trouble and/or force them to leave the platoon.

For these reasons, Defendant's motion is DENIED with respect to

these actions taken by Moniz.

E.      Legitimate Reason and Pretext

Defendant argues that Plaintiff cannot establish that each alleged

retaliatory act was a pretext for retaliation.

Once a prima facie case has been established under Title VII, the burden then shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse action.  See Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003).  If such a reason is proffered, the burden shifts back to the plaintiff to prove that the proffered nondiscriminatory reason is pretext.  See id.; Chuang v. Univ. of Cal. Davis, Bd. of Trs., 225 F.3d 1115, 1123-24 (9th Cir. 2000).

As noted above, some of the alleged retaliatory acts occurred outside of the 300-day time period.[8]  As those acts are time-barred, this Court will only consider alleged retaliatory acts that occurred within the 300-day time limit. Defendant, however, only addressed actions that are time-barred, and has not provided legitimate reasons for alleged adverse actions by Moniz that occurred within the 300-day time period, such as the alleged poor performance evaluation on February 28, 2006, or any other acts occurring after February 25, 2006, that Plaintiff claims are retaliatory.  Likewise, although Lt. Daniels did not know of

---

[8] For example, Plaintiff alleged that Moniz demanded traffic citations from Plaintiff in October 2005.  Because this occurred more than 300 days prior to Plaintiff's December 21, 2006 filing of the First Retaliation Charge, Plaintiff cannot rely on this action to prove retaliation by Moniz.  Likewise, Plaintiff cannot rely on the personnel performance counselings issued by Moniz on July 15, 2005, October 11, 2005, and January 23, 2006.

28

Plaintiff's complaint at the time she started the investigations which led to the ten-day suspension, Defendant has not addressed its reasons for the ten-day suspension or for placing Plaintiff on limited civilian duty status when she returned to work in 2007.

Accordingly, as Defendant has not moved on this argument with respect to the timely allegedly retaliatory actions, this Court will not consider this argument.  Likewise, this Court notes that Defendant has not sought summary judgment with respect to Plaintiff's gender discrimination claim and therefore will not discuss that claim under a pretext analysis.

III.   Breach of Implied Contract Claim

Defendant contends that the workers' compensation scheme bars Plaintiff's breach of implied contract claim because workers' compensation is her exclusive remedy.  Plaintiff states that this claim has been dismissed via a stipulation.  Defendant withdrew this argument at the hearing.

IV.   IIED Claim

Defendant asserts that Plaintiff cannot establish that Defendant acted outrageously because it promptly investigated Plaintiff's sexual harassment claim and it cannot be held liable for Officer's Moniz's actions under a theory of respondeat superior.  Specifically, Defendant asserts that it is only liable for actions

of employees that occur within the scope and course of their employment.

Defendant claims that because Plaintiff asserts she was not only harassed, but

sexually assaulted by Moniz, Defendant, as Moniz's employer, cannot be found

liable for IIED.

In order to establish an IIED claim, a plaintiff must show "'(1) that the

act allegedly causing the harm was intentional or reckless, (2) that the act was

outrageous, and (3) that the act caused (4) extreme emotional distress to another.'"

Enoka v. AIG Haw. Ins. Co., 128 P.3d 850, 872 (Haw. 2006) (quoting Hac v.

Univ. of Haw., 73 P.3d 46, 60-61 (Haw. 2003)).  The Hawaii Supreme Court

defines the term "outrageous" as conduct "without just cause or excuse and beyond

all bounds of decency."  Enoka, 128 P.3d at 872.  An IIED claim cannot be

sustained by "threats, annoyances, petty oppressions, or other trivialities."  See

Bragalone v. Kona Coast Resort Joint Venture, 866 F. Supp. 1285, 1294 (D. Haw.

1994).  "[P]laintiffs must necessarily be expected and required to be hardened to a

certain amount of rough language, and to occasional acts that are definitely

inconsiderate and unkind."  Restatement (Second) of Torts § 46 cmt. d.

Hawaii's definition of outrageous conduct creates a very high

standard of conduct in the employment context.  See Ross v. Stouffer Hotel Co.,

879 P.2d 1037, 1048 (Haw. 1994) (granting summary judgment for employer on

employee's IIED claim); <u>Ingle v. Liberty House, Inc.</u>, Civil No. 94-0787(3), 1995

WL 757746, at *4 (Haw. Cir. Ct. Oct. 12, 1995) (noting, "In Ross, the Hawaii

Supreme Court recently has set an extremely high, standard for such a claim in the

employment context[.]").  Under Hawai`i law, termination alone is not sufficient to

support an IIED claim; rather, what is necessary is a showing of something

outrageous about the manner or process by which the termination was

accomplished.  As stated in <u>Ingle</u>, "[a]lthough intentional infliction claims

frequently are asserted in connection with employee dismissals, recovery is rare.

Imposition of liability on this tort theory is likely only in the unusual case when an

employer deliberately taunts an employee, or when an employer handles an

employee with outrageous insensitivity." <u>Ingle</u>, 1995 WL 757746, at *4 (quotation

omitted; emphasis added); <u>see also</u> <u>Courtney v. Canyon Television & Appliance</u>

<u>Rental, Inc.</u>, 899 F.2d 845, 852 (9th Cir. 1990) ("[d]ischarge, without evidence of

more, does not create a case for emotional distress.").

      This remains true even where an employee alleges that a termination

was the result of unlawful discrimination or retaliation.  <u>See</u> <u>Ross</u>, 879 P.2d at

1048 (termination based on alleged marital status discrimination was insufficient to

sustain IIED claim); <u>Bragalone</u>, 866 F. Supp. at 1294 ("firing an employee for

what are seen as unfair reasons" was insufficient to sustain IIED claim) (citations

31

omitted); see also Shoppe v. Gucci Am., Inc., 14 P.3d 1049, 1068 (Haw. 2000)

(employee's complaints of termination based on age discrimination and of a

"vicious" verbal attack, being yelled at, criticized for poor job performance, being

singled out and told to wear more makeup because the employer was looking for a

much younger look, and being chastised in front of other employees, was

insufficient to create a genuine issue of fact of outrageousness).

Here, the actions engaged in by employees other than Moniz do not

rise to the level necessary to prove an IIED claim.  Indeed, Plaintiff was not

terminated, and she was suspended only after an investigation had been completed

into her conduct.  Moreover, Defendant conducted an investigation into her

harassment complaint immediately after she made an official internal complaint,

and Defendant granted her transfer request and her leave request.  Finally, Plaintiff

was returned to limited duty status because she was not cleared for full duty by

Defendant's physician.  Plaintiff does not allege that anything was outrageous

about the manner in which Defendant took these actions.  Thus, none of the actions

taken by Defendant rise to the level required for an IIED claim to go forward.

Defendant next asserts that to the extent Moniz's actions may be

considered outrageous, such as the alleged sexual assault, it cannot be liable for his

actions because anything outrageous done by Moniz was outside of the scope of his employment.

"Under the theory of respondeat superior, an employer may be liable for the negligent acts of its employees that occur within the scope of their employment." Wong-Leong v. Hawaiian Independent Refinery, Inc., 879 P.2d 538, 543 (Haw. 1994). To determine whether a tort was committed within the scope of employee's employment under Hawaii law, Hawaii courts follow the Restatement of Agency § 228, which provides that:

> (1) Conduct of a servant is within the scope of
> employment if, but only if:
> (a) it is of the kind he is employed to perform;
> (b) it occurs substantially within the authorized time and
> space limits; [and]
> (c) it is actuated, at least in part, by a purpose to serve the
> master[.] . . .
> (2) Conduct of a servant is not within the scope of
> employment if it is different in kind from that authorized,
> far beyond the authorized time or space limits, or too
> little actuated by a purpose to serve the master.

Wong-Leong, 879 P.2d at 543. "In determining the scope of employment, the applicable test is whether the employee's conduct was related to the employment enterprise or if the enterprise derived any benefit from the activity." Id. at 546. "Whether an employee is acting within the scope of his or her employment is

ordinarily a question of fact to be determined in light of the evidence of the

particular case."  Id. at 543.

The Restatement of Agency section 229 provides that "[t]o be within

the scope of the employment, conduct must be of the same general nature as that

authorized, or incidental to the conduct authorized."  Restatement of Agency 2d

§ 229 (1958).  The comments provide that

> a servant is authorized to do anything which is
> reasonably regarded as incidental to the work specifically
> directed or which is usually done in connection with such
> work . . . [a]lthough an act is a means of accomplishing
> an authorized result, it may be done in so outrageous or
> whimsical a manner that it is not within the scope of
> employment.

Restatement § 229 comments a and b.  Following the Restatement, the Hawaii

Supreme Court has noted that an act, "although forbidden, or done in a forbidden

manner, may be within the scope of employment . . . the ultimate question is

whether or not it is just that the loss resulting from the servant's acts should be

considered as one of the normal risks to be borne by the business [.]"  State v.

Hoshijo ex rel. White, 76 P.3d 550, 563 n.29 (Haw. 2003)(finding that the actions

of a student manager of the state university basketball team in shouting racial slurs

at a spectator at a basketball game was conduct within scope of employment

because he was required to attend games, work on the bench, assist the team, it was

34

foreseeable that he would interact with the public at games, and the handbook proscribed use of obscene or inappropriate language to spectators).

Here, Plaintiff has not alleged that Moniz acted negligently.  Indeed, this claim is based upon his intentional actions.  In addition, even if Moniz did commit a sexual assault or sexual harassment, it was not the conduct for which he was hired as a police office and by no means served the interests of Defendant. Thus, although Moniz's actions could rise to the requisite level of outrageousness, that conduct was clearly outside of the course and scope of his employment by HPD.  Defendant, therefore, cannot be found liable in these circumstances for intentional infliction of emotional distress based upon respondeat superior liability. See Luna v. Meinke, 844 F. Supp. 1284, 1287-88 (N.D. Ill. 1994) ("An agent . . . is deemed to have acted outside the scope of his or her employment if the employee commits certain acts 'that could not possibly be interpreted as the merely overzealous or ill-judged performance of his duties as agent.'") (citation omitted); See Grozdanich v. Leisure Hills Health Ctr., Inc., 25 F. Supp. 2d 953, 979 (D. Minn. 1998) ("Naturally, the more outrageous the employee's tortious act should be, the less likely it could be described as foreseeable, and the less likely that the employer could be required to assume responsibility for the act, as a general risk of the employer's business.").

Plaintiff did not bring a negligent supervision claim. <u>See</u> <u>Dairy Road Partners v. Island Ins. Co., Ltd.</u>, 992 P.2d 93, 122 (Haw. 2000) (noting that "as negligent supervision may only be found where an employee is acting outside of the scope of his or her employment" and that the complaint did not allege negligent supervision").  Accordingly, there is no basis for liability against Defendant for her IIED claim.   For these reasons summary judgment is GRANTED in favor of Defendant on Plaintiff's IIED claim.

CONCLUSION

For the reasons stated above, the Court GRANTS IN PART AND DENIES IN PART Defendant's Motion. (Doc. # 45.)

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 29, 2009.



_____
David Alan Ezra
United States District Judge

<u>Ho-Ching v. City and County of Honolulu</u>, CV No. 07-00237 DAE-KSC; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT